case for oral argument is Evans v. Sandy City. May it please the Court, Angela Elmore for the appellant in this case, Stephen Ray Evans, the plaintiff below. First, I'd like to point out the procedural posture of this case, as I believe it is important with all the issues on appeal. First, below, not only did the City have the burden to show that the ordinance at issue was constitutional, but also the procedural burden to show that summary judgment was appropriate. We've raised several legal issues as well as procedural issues, but I'd like to focus on two that I believe warrant most of the discussion. Obviously, I'm open to questions by the panel. One is whether or not a median is a public forum. Now, some circuits are decided on this issue, and I'd like to focus on the logistics of a roadway and the history of a roadway. Roadways have been dirt roadways that had horses. Over time, those have evolved. Now we have buses, cars, stop signs, stop lights, and with that, the restrictions on speech on those roadways have changed. That's not to say that that's not a public forum any longer. Now that medians reside in the middle of these roads, it's not changed that it's a roadway. Whether the Court believes that these have characteristics of sidewalks or roadways, still, they are public forums. Once raised, the city has the requirement to rebut that, and in this case is attempting to use cases to say that they can create or carve out exceptions to this public forum. Specifically, the Coquinda and Hawkins case, and in those cases, they're very specific to location. And in this case, there's been no specific analysis of the medians throughout Sandy City. There have been discussions. And isn't that a baseline problem in this case? Yes. We do not have factual development of the medians, how many they are, what they look like, anything like that done by the district court. Is that right? That is correct that we do not have a full-scale inquiry into all of the medians in Sandy City. We do have an inquiry into a large number, and most of that was produced by the plaintiff and not the defendant. And did the district court then make findings as regards the characteristics of various medians, what some were and what some weren't, and which, if any, of these fell within or without the traditional public forum? I believe the Court is speaking to the very limited record that we have below. And, no, the Court did not do so. In a very limited and short decision, the Court did not identify any specific features of any specific median, why or why not they fell within or outside of what we would call broad ordinance in this case. Counsel, let me ask you this. Did you or can you name any binding precedent where courts found prohibiting speech on narrow, unpaved medians that were built to divide traffic rather than invite pedestrians, a violation of the First Amendment? If you found any of those cases, I don't think you cited any. Specifically, no, but I don't necessarily believe that's the inquiry after McClellan. I believe that the inquiry is whether or not the city determined whether or not that governmental interest is sufficient to burden the speech that would be on those specific medians, and that didn't occur. Well, you look at the exhibits that I've seen. I think they're all part of the record. Well, I noticed in your brief that you did cite a lot of what I call non-binding precedent in regards to this case, but I don't see anything when you say the burden is on the city. Well, the ordinance looks pretty neutral when you look at it, and you see the documentation that's provided as far as the picture of what's happening. And you're wanting to argue that that's a public forum when it would appear that it's pretty narrow, pretty rocky, which could lead to the conclusion pretty unsafe. And regardless of all that, how does this, the ordinance, prohibit on the basis of time, space, and manner the right of the city to exercise its safety procedures or police powers to prevent a certain place from being used for a certain thing? Well, Your Honor, in this case, and specifically, I want to address the issue of whether or not this is a public forum. Well, I know that you want to address it as a public forum, but I'm saying what difference does it make if it's reasonable within time, space, and manner as far as the city can prescribe an ordinance on the basis of the safety of the public, whether it's public or not? Yes, Your Honor. In McClellan and also in this Court's decision in iMatter, when a court is eliminating a public forum, and that's obviously why we're arguing, there is additional evidentiary requirements of the city to show whether the governmental interest, there is a justification for burdening this amount of speech, and second, whether or not there were less restrictive alternatives. And so in this case, not only did the city fail to show that this burdened substantially less speech, evidenced by pages 205 to 210, and these are just some of the medians that we reference in our appendix, that are large, arguably unpaved medians. And so in leaving no limitation on the unpaved medians, this encompassed a vast majority of the medians within Sandy City. Not to say that the city doesn't have a substantial interest in protecting the public pedestrians, drivers, and we're not arguing that. We're arguing that they need to actually inquire as to the medians in their city, and whether it's the 18-inch medians, 36-inch medians, 6-foot, some of these are 12 feet wide and unpaved, and certainly they didn't do that in court. But that's not the facts of this case. The facts of this case, on the basis of the ordinance, shows a very narrow median, very rocky, unstable for probably flooding. So that's where I'm narrowing it down to. I mean, there's a lot of cases, and you and I both have seen some medians with grass on them, and I'm reminded of a lot of Sunday mornings where the media is wide, people selling newspapers and coming out. And even there, it's a little dangerous, but it's a public forum that they've declared. So, but I'm saying limited. Oh, excuse me. Yeah, go ahead. No. Well, and to speak to that specific median, which I do think the analysis needs to be broader than that, but to the specific median that you're referencing, the one with the Southtown or the Automall sign, and it's approximately at least six feet wide, and it has one large boulder and then several small rocks on the ground there. There has been no analysis in this case. Mr. Johnson simply walked out on one median at one intersection in Sandy City, and he's a city prosecutor and determined his subjective opinion that it's unsafe when he reached a certain location, and that is how they came to the conclusion of the 36 inches or less. And that is only with regards to the paved medians and his subjective opinion that all unpaved medians are unsafe. So in this case, and I think that McClellan requires more of the city, some sort of inquiry, some cases have required experts, have required a survey of the city. The city in their brief claims that they surveyed the entire city. In this case, there's no evidence in the record of that. But the sweep of the ordinance is very broad, is it not? It's not just to unpaved or rocky medians. Well, and that's part of the issue in this case, and that we raised below, is that there is no definition of paved. And so, and we did get a difference of opinion from both police officers, prosecutor, and the police chief as to when these would be enforced, when a median would be paved, when it would not be paved. And so, yes, arguably, this has quite a large scale of speech that it is encompassing. Well, counsel, could you just help me understand what you think should have been done here? Yes, sir. I mean, they should have had an expert. They should have, I mean, just help me understand what you think should have happened. Yes, and in part, as limited discovery occurred, and as you know, summary judgment was filed almost immediately upon answer in this case. Limited discovery over this case was five months only in the court below, less than actually. We determined that there were actually some complaints regarding panhandlers, some people intoxicated nearly falling off medians and such. Those issues were developed through discovery but never actually sought beforehand. So, what we would have asked is that there was an inquiry as to the locations in the specific problem areas. In this case, it was 90th South, 106th South, 114th South, which are between the freeway and State Street. Those specific locations are where all of the complaints were coming from. And so, had the city done this inquiry, they could have determined, at least first, step one is finding out where the issues are. What size of medians? When accidents occurred? What time of day? Which location? So, in Reynolds, and I understand they may not be finding precedent for the court, but in Reynolds and Cutting, the courts asked similar questions in oral argument. What could they have looked at to provide evidence to show that they have narrowly tailored this ordinance to impact the type of issues that they had had? In this case, it was very, very limited. So, it's too broad is your point. Too much speech is harmed. Too much speech is being swept into this concept of public safety without any sort of justification for it. Did I answer your question? Well, I mean, essentially you're saying that the ordinance applies to everything and it should have been targeted just to these unsafe medians that you've identified. Assuming that the city can show that there's a justified safety concern that can't be addressed otherwise. Because, obviously, in this case, as we know by the record, there are aggressive panhandling statutes, which were some of the complaints, public intoxication, which were also some of the complaints. There weren't actually any. There were complaints of close calls. There were no accidents that had ever occurred at any of these locations that we're aware of. And so, certainly, if they meet that burden below, then it may be justified. And we're not here to say that there may not be an occasion where a small median, as the court held in Reynolds, an eight-inch median, may not be safe for someone to stand on when 45 miles, 55 miles an hour traffic is coming through. So, we are not arguing that today. We're just arguing that the city has not met the burden that they are required to meet. And that's required by intermediate scrutiny. I mean, essentially, you're saying maybe they passed rational basis, but intermediate scrutiny requires more here, which is a tighter fit. Correct. Which is not present. Correct. And, Your Honors, I would save the room any time. Thank you. Thank you. Thank you, Your Honor. May it please the Court. Troy Boer and David Ryman on behalf of Sandy City and the officials. The reason that a study is not required here is that the Sandy City ordinance is, in fact, the less restrictive means that the courts pointed to in both Cutting and Reynolds to invalidate those statutes. Up until a few years ago, state statute in Utah was the statute in Reynolds. It targeted solicitation and panhandling. And the scope of it was all roadways, including shoulders and medians. That was struck down. Sandy City has no quarrel with that. They stopped enforcing it. What the chief of police wanted in Sandy City was the ordinance in Portland, which is the Cutting case. He said there are no such thing as a safe median. We didn't construct medians for people to be on. Well, but don't you have medians in Sandy City that are landscaped and have park benches on them? The only thing they pointed to, Your Honor, is something that the city absolutely does not consider to be a median. It's right outside of City Hall, and it does not have traffic going in both directions. It does not divide traffic going in both directions. Are there medians that have crosswalks going to them and from them? There are medians where crosswalks go to the median, but only because they go completely across the street. I'm not aware of any crosswalks that direct someone to a median only. Are there medians that have monuments on them? The only median that has a monument on it is the one that I just described, which is outside of City Hall. So it's the only one that has a median. It's a median with park benches and a monument. I'm not sure about the benches. I think that comes from Reynolds, but there could very well be benches. A monument is enough, so I'll just concede that. There could be 20 benches as well, but that is not a median where traffic goes both directions, and the city said on the record they don't consider that a median. What effort was made by the city to narrow the sweep of this ordinance? The effort was made exactly as was described in Reynolds and in Cutting, that they went out and they said, number one, we're not going to target a type of activity. We're just going to look at medians and whether they're safe or not, and we're only going to place this restriction on ones that we legislatively deem to be unsafe. That is not all medians. That's what the chief of police wanted. That's the ordinance in Cutting. Sandy City said we're not going to do that. We have to do more under intermediate scrutiny. And so the safety determination, yeah, go ahead. They went out and they stood on different medians, and they asked themselves how wide does it need to be where with traffic coming by, I feel as if I'm safe, I'm not going to move a couple inches, get clipped by a mirror on a big truck, and alternatively, do I feel safe on the medians that are uneven and landscaped with rocks as the auto mall is where Mr. Evans was here. They went out, they gathered that data, and the city attorney came back, reported, along with the chief of police, to the city council, and they decided that the correct way to craft and narrow their ordinance as described as what should be done in Cutting and Reynolds was 36 inches is enough. Anything beyond that, if it's flat, it's safe. Flat and paved, safe. Anything that's landscaped, it's almost impossible to describe it in any way except if it's uneven and landscaped in some way, it's not paved, then we're not considering those to be safe medians. That's the way that they put it together. And so this was presented to the district court? Absolutely. And the district court made factual findings as to the efforts made by you all and your determination as to what medians were safe and needed to be restricted? The district court had before it a motion for a preliminary injunction that was filed by Mr. Evans and had before it a motion for summary judgment. The district court specifically allowed the parties to do any discovery that they thought necessary before he would adjudicate those motions and before they were briefed. The parties did all the discovery that both parties thought were necessary. They put it in those motions, and ultimately what the district court did is he ended up granting the summary judgment motion in favor of Sandy City. I think that under Citizens for Peace v. Colorado Springs, because there is no deference in First Amendment cases given to district court findings when doing an intermediate scrutiny analysis, I don't think the summary judgment posture matters here. I don't think any material facts that are in dispute that have been identified that go to the intermediate scrutiny test and the fit specifically, I don't think there's been any material facts identified that aren't legislative in nature and that this court wouldn't defer to even if the district court had made formal findings. So the district court didn't make findings? No. He adjudicated it on summary judgment. But you can construe anything that's actually a brute fact that this court would give deference to, you can construe in favor of Mr. Evans. There's no such facts. Do you think that on this record that we're at intermediate scrutiny? I think so. I think there's no doubt. Do you think this ordinance was fashioned narrowly enough to satisfy an intermediate? Absolutely. And let me explain why. So even the courts that believe that McCullen expanded intermediate scrutiny in some way, and Reynolds is a good example of that. Let's look at the analysis in Reynolds. Reynolds tracks McCullen, and what the court says correctly is you don't have to get an expert and put on a bunch of evidence in order to convince us that there's a safety concern. That's fine. Reynolds agrees. The city there had a safety concern. You also don't need experts to show that that safety concern is satisfied by this ordinance for things that sort of fit within its core. And the example that Reynolds pulled out is they said you've got an 18-inch median, but we don't need data to show that that's unsafe. Of course the ordinance could cover that. But where did the additional evidence and data need to come in in both Cutting and Reynolds? It was because there the ordinances covered every single median and roadway in those cities, which necessarily encompassed what Reynolds court said, 50-foot wide medians within that city. If you want your ordinance to encompass that type of median, you're going to need to present us data under narrow tailoring to show us why your safety concern is furthered by restricting the speech in those type of medians. That's why those ordinances failed. We don't need that here. Have you had a chance to look at our cases in Verlo? And you saw probably in reading those opinions that we saw in those cases the need to have fact-finding and to look at the forum and describe the forum and understand how the forum was used. And without that baseline information, it is very difficult for us to make a First Amendment analysis. I think that's a very fair point, Your Honor. And I think that in Verlo, here's what I would say about the forum argument before the court right now, is that all the discovery that needed to be done was done by the parties. Sandy City put on evidence that none of the unsafe medians in Sandy City were designed for pedestrians. They were all designed just to divide traffic. The argument was made by Sandy City that these are not public forums, traditional public forums, because of that evidence and there was no evidence whatsoever put on to rebut that. Now, if the court finds that sufficient, and I think it could, because there's unrebutted summary judgment testimony that says that these medians were not intended, their purpose was not for pedestrians, and even though both parties were given the opportunity to gather whatever evidence they needed at that stage of the proceeding, none was put on. But the court doesn't need to go there. And the reason the court doesn't need to go there is even if it's a traditional public forum, intermediate scrutiny applies and all you need is a fit. And the fit that wasn't there in McClellan wasn't there in part because there were other ordinances that got at the conduct. There wasn't a fit in Reynolds. It's because there were other ordinances that got at the conduct. There wasn't a fit in Cutting or Reynolds because the ordinance covered every single median in the city. Here, you've got a legitimate safety concern and you've got an ordinance that's customized. I would submit that this ordinance is the less restrictive means that invalidated both of the ordinances in Cutting and in Reynolds. And so it turns out that those are, in fact, our best cases because those circuits, in analyzing broader statutes, essentially invalidated those statutes because they didn't look like Sandy City's here, because Sandy City has confined its restrictions to those medians that are unsafe. And so there is no need for further data analysis. If there is, it's in this record. Any median that is unpaved is a fortiori unsafe. That's right. No matter how wide. Your Honor, if we had in this record, and every, by the way, photos of every median in Sandy City were put into the record for this reason. But if we had on this record, and if the plaintiffs had identified a number of medians that are... But is the burden on the plaintiff in this case, I mean, it's the city that passed the ordinance. And so you have to narrow your ordinance to fit your concern. Absolutely. So have you narrowed? Absolutely. We have. We put on the evidence of every median in front of the district court. We pointed out that there is sufficient fit here. We pointed out that in looking at all of these... Because you had a guy standing on them saying, I feel unsafe, or I feel safe. Well, Your Honor, I don't think that it's just that. I mean, that's the way that part of the data is gathered here. But even Reynolds, in making the point, the court judicially made the point that an 18-inch median is per se unsafe. There would need to be no study done. You wouldn't even need to have a guy go out there and stand on it for the Reynolds court to conclude that that's unsafe and that you can restrict in a time, place, manner way the people standing and sitting on that median. And so here, it's double. It's 36 inches, but that's still only three feet wide. And so I don't think it's... And I don't mean to put... I don't think it's as frivolous as one person going out and saying that I don't feel safe. That it's a common sense determination that can be made at that point. And as long as you're within what the Supreme Court has considered to be a common sense safety concern, what the Reynolds court considered to be a common sense safety concern, they didn't say the outer limits was more than 18 inches. They just used that as an example. What are the outer limits of the common sense safety concern? As long as you're within it, you don't need a study. But we have data here if data was necessary from public complaints and the safety concerns on these particular medians. Well, the public complaints went to how many medians? I don't know the different medians that it went to. I don't know which one. All of those reports, by the way, every single one of those police reports are also in the record. And so the fact that the ordinance here was crafted responsibly in response to Cutting and Reynolds, it was crafted in a way to only get at the safety concern. That was the point of it, not to restrict the speech on every single median in Sandy City. It was crafted to get only at the safety concern. There is enough of a fit. There is a common sense safety concern. And a median that is under three feet I think is still within the common sense safety concern that you don't need to commission a study or you don't need someone to get hit and hurt first before a city can act legislatively in that particular area. And so Sandy responsibly put its ordinance together so that it only got at those safety concerns. It doesn't mention conduct like most of the other ordinances do. It only mentions medians. It only goes to the type of median. Was the target here actually panhandling? No, Your Honor. Was there discussion of panhandling in the city commission? Yeah, and it's very interesting what that was. It was post-enactment discussion. That's number one, irrelevant under O'Brien. But number two, if you look carefully at it, the only reason that it was brought up is because there was an animus argument made below that has been abandoned on appeal. There was also a vagueness argument made below that was abandoned on appeal. But the animus argument made below went to those post-enactment comments. If you look at them, though, they certainly don't make this content-based because the point is that it has to be a restriction that you're putting on speech, not because you disagree with it. If you look at that post-enactment comment, it is sympathetic to the message that Mr. Evans is conveying when he's out there. It is saying, I've seen those signs, I'm sympathetic to it, and as a city, maybe we need to do something to help out. Because I think this ordinance that we've just passed will impact this guy. Absolutely. He's trying to panhandle. And there is no doubt that psychologically people on a city council, any city council considering an ordinance like this, there is no way that I'm going to stand up here and tell you that people don't understand who's going to be affected. But that's worlds away under the law from enacting the statute in order to get at a certain viewpoint and suppress it. And if you look at the reply brief here, it's basically conceded that this is content-neutral. Thank you, Your Honor. Thank you. I would like to first respond to one factual statement that was just presented, which is that most of the statements regarding panhandling were post-enactment. And, in fact, there was a limited discussion with Captain O'Neill. And he specifically affirmed that they would be citing panhandlers prior to the vote occurring. So prior to considering and thinking at any length about this ordinance, at the actual enactment hearing there was a discussion about panhandlers. It was only the subsequent hearing where there was additional discussion in specific reference to someone that had previously sued the city, i.e., my client. And so I also would like to address, and the Court points out, that it is not the plaintiff's burden in this case. And not only was it the city's burden, and as I pointed out to begin with, it was also their summary judgment motion. And so when they point to the lack of evidence that we presented to the Court, this was a summary judgment motion that they had, and it was their burden to show that the ordinance was unconstitutional. But regardless, it was unconstitutional. Constitutional. You mean to say it was their burden to show it was constitutional. Yes. I am so sorry. I was moving on to my next point. And I wanted to also discuss some of the medians that the Court referenced, and specifically some surrounding City Hall. And, in fact, we did present evidence and photographic evidence that there were medians throughout that area that had sidewalks going through them, small medians. And now the evidence varies depending on who is enforcing the ordinance, whether or not that is a median or whether it's unpaved. But the intent of the city to enforce these medians or build these medians, I believe, is irrelevant. None of the cases have considered the intent necessarily of the city. And it's more to the point of the reasonable expectations of a speaker. In these cases where they have open paved medians that are 12 feet wide, six feet wide, that abut the sidewalk, is it a reasonable expectation that that is still a public forum? I would say yes. In this case, Mr. Evans was standing on one of those medians, the same median that he had previously stood on when the city cited him with an unconstitutional statute. And so I would ask the Court not to consider the common sense argument that the appellees make. The Court should – they refused to follow it in Reynolds. I think that the Court should follow the same. Unless you have any other questions, I will concede my time is up. Thank you. Thank you, Your Honor. Thank you all for your arguments this morning or this afternoon. And this case is submitted.